[Civ. No. 14359. Second Dist., Div. One. June 15, 1944.]

PAUL B. HUGHES, Respondent, v. CHARLES WRIGHT, Appellant.

Louis Elowitt for Appellant.

Peyton H. Moore for Respondent.

WHITE, J.—This is an appeal from a default judgment and from an order refusing to set the same aside.

The action was commenced by plaintiff against defendant to quiet title to property, cancel a lease, and to recover certain moneys allegedly due from defendant pursuant to the terms of said lease and of an oral agreement allegedly made in connection therewith.

Service of summons and complaint was made upon the defendant April 30, 1943. He employed counsel (not his present attorney), and an oral agreement was entered into between counsel for plaintiff and defendant extending the time within which the latter might plead to the former's complaint. The term of such extension is in conflict. The affidavit of plaintiff's attorney avers that counsel retained by defendant sought and was granted a ten-day stay of time within which to appear in the action. That no further extension of time was given but that plaintiff's counsel did state to defendant's attorney that should the latter require additional time and forward to plaintiff's counsel a written stipulation providing for a further extension, not exceeding ten days, such stipulation would be signed, but that no written stipulation was ever presented. That two personal conferences and several telephone conversations were held by

respective counsel between service of summons and complaint on April 30 and June 15, 1943. That on or about June 20, 1943, plaintiff's counsel attempted to communicate with defendant's attorney by telephone but was advised that the latter was absent from the city. After two or three subsequent telephone calls, the office of defendant's counsel informed plaintiff's counsel, on or about June 27th, that he was going to retire from the case. That on June 30th, plaintiff's counsel received from defendant's attorney a letter stating that the latter was not going to appear in the case and had so notified his client, the defendant Wright. The letter in question was attached to the affidavit of plaintiff's counsel and is not denied. The affidavit of plaintiff's counsel also sets forth that a conversation was had with defendant's attorney on July 2d in which reference was made to the aforesaid letter and defendant's counsel was informed that no one else had up to that time appeared for the defendant. That upon this occasion defendant's counsel replied "I have told him two or three times to get a new attorney, and I feel under no obligation to him." According to his affidavit plaintiff's counsel then said "What do you think about my taking a default?" to which defendant's attorney replied "I can't ask you not to," and thereupon plaintiff's counsel said "If he doesn't appear by the first of the coming week I'll have it entered." According to his affidavit, plaintiff's counsel then waited until July 7th, or Wednesday of the following week when, no appearance having been made in behalf of defendant, plaintiff's attorney caused the default of said defendant to be entered. That thereafter, not having heard from the defendant or any attorney representing him, plaintiff's counsel brought the matter on for hearing by the court on July 20th, following which hearing a default judgment was ordered entered. That on the following day, July 21st, the defendant personally called upon plaintiff's counsel and was informed by the latter that said judgment had been entered.

The affidavit of the attorney who represented the defendant at the time here pertinent states that he contacted plaintiff's counsel and in conjunction with the latter "tried diligently for several months to effect an amicable settlement between the parties to the action; that during this time there was an indefinite extension granted to defendant by Mr. Moore

(plaintiff's counsel), pending the negotiations; that during the week of June 28, 1943, it became apparent to Mr. Moore and to affiant that the matter could not be settled amicably and would have to go to trial; that affiant, for personal reasons, wrote a letter to Mr. Wright (the defendant) on June 29, and withdrew from the case; that this letter stated, in part, as follows: 'Your new attorney should get in touch with Mr. Moore immediately and either get a further extension of time or file whatever type of pleading you desire.' That on the same date affiant wrote to Mr. Moore, advising him that he had requested Mr. Wright to obtain the services of other counsel; that subsequently on one or two occasions, Mr. Wright telephoned affiant and it was understood that he would employ other counsel."

In his affidavit defendant's counsel further states that on July 2d he talked with plaintiff's attorney on the telephone, during which conversation the latter inquired whether "it was all right to take Mr. Wright's default"; that defendant's counsel informed plaintiff's attorney that "while there was no moral obligation on his part" not to take such default, that defendant's counsel would appreciate it if plaintiff's attorney would wait until the first of the following week "because Mr. Wright had been very busy down in San Diego," and in which request plaintiff's counsel acquiesced. Defendant's attorney then sets forth in his affidavit that by reason of an injury sustained by him he was confined to his home on July 8th and 9th, 1943; that sometime during the day of July 8th, the defendant personally telephoned him at his home and talked with his wife, who after consultation with him, informed the defendant that her husband would try to get a further extension to the first of the following. week, which would be July 12th. Defendant's counsel then sets forth in his affidavit that he communicated with his office secretary but that he and his secretary "cannot now agree whether affiant neglected to ask her to call Mr. Moore or whether affiant informed her and the secretary neglected to call Mr. Moore." In any event, it is admitted that defendant's counsel did not make a request of plaintiff's counsel for a further extension.

The affidavit of Charles Wright, the defendant, states that he left the city of Los Angeles on a business trip to San Diego June 26, 1943, at which time "he was under the impression that negotiations for settlement were still pending"; that he

remained at San Diego until the evening of July 7th, when he returned to Los Angeles. That on the following morning, upon going to his office, he found there the letter from his attorney written on June 29th requesting that the defendant retain other counsel. In his affidavit defendant further avers that immediately thereafter he communicated with the attorney who had represented him, informed the latter that he had been out of the city for several days and had just received the aforesaid letter; that he would like to have the attorney obtain an additional ten days within which to file his answer so that he could obtain the services of another attorney. That his former counsel "promised to obtain additional time for defendant to plead." That several days thereafter the defendant went to the office of plaintiff's counsel "with the purpose of further discussing a settlement; that not until he had conversed with Mr. Moore for some time did he know that a default judgment . . . had been taken against him." By his affidavit the defendant further avers that he has been advised that he has a good and valid defense to the action herein "as indicated by the proposed answer, counterclaim and cross-complaint attached hereto."

While it is true as contended by appellant that the law looks with favor upon the settlement of controversies rather than litigation and will not permit a litigant to be deprived of his right to plead his cause when, by reason of continued negotiations looking toward a settlement, he is lulled into a sense of security concerning the necessity for his filing a formal pleading (*Beard* v. *Beard,* 16 Cal.2d 645 [107 P.2d 385]), nevertheless, the law also frowns upon setting aside default judgments which are the result of inexcusable inadvertence, surprise or neglect of defendants, themselves, or of their attorneys in the performance of the latters' obligations to their clients. The condition or situation which section 473 of the Code of Civil Procedure seeks to remedy is one in which a party to a cause is unexpectedly placed, to his injury without any fault or negligence of his own which ordinary prudence could not have guarded against. It is not every inadvertence or negligence that warrants judicial relief, but only such inadvertence or negligence as may reasonably be characterized as excusable. In the instant case we are confronted with a situation wherein appellant's attorney had two or three times told him to retain the services of an-

other lawyer. Manifestly, from the facts contained in the record and narrated herein, it cannot be said that there was any misunderstanding between respective counsel, but on the contrary it appears that respondent's counsel was unusually lenient with and considerate of appellant's counsel. Indeed, when the latter's counsel was asked by respondent's lawyer what he thought about a default being entered he replied "I cannot ask you not to."

As to appellant, himself, the record indicates that on July 8, 1943, when he received the letter from his attorney advising that the latter had withdrawn from the case, he did nothing except to communicate with counsel who had represented him and was informed by the latter's wife that her husband would attempt to secure an additional ten days' extenstion. Notwithstanding this precarious condition in the affairs of his case, appellant did nothing to ascertain whether such extension had been granted until July 21st. Even had such ten-day extension been granted on July 8th, it would have expired on July 18th, or two days before the default judgment was entered. Nothing contained in the affidavits on behalf of appellant shows any fault or omission of duty on the part of respondent or his counsel. We are unable to perceive wherein appellant can claim to have suffered accident or been surprised, when he knew, or might have expected, the result which followed the withdrawal of his attorney and his own failure to secure other counsel or to solicit a further extension of time from respondent's counsel. The urgency of respondent's business in San Diego does not appear, but so far as the record discloses, his absence from Los Angeles was a matter of choice. Having chosen to consider his interest at San Diego of more concern than his interest in this action, he cannot now avail himself of his neglect of the latter as something that ought to be excused. Furthermore, upon his return from San Diego on July 7th, there yet remained several days within which he could have engaged other counsel or have sought further extension of time to answer, but he chose to rely solely upon his request of counsel who had withdrawn from his case to attempt to secure a further extension, and beyond that, appellant manifested no further interest until some ten days later, at which time he learned that on the day previous to his inquiry of respondent's counsel, a default judgment had been entered against him. We cannot therefore say that the court, upon the showing made by appellant in his affidavits, com-

mitted error in refusing to set aside the default and judgment. ██ Courts are clothed with a broad discretion in granting or refusing relief against default, and only in cases where the lower court has abused its discretion will the appellate tribunal reverse its action. ██ While section 473 of the Code of Civil Procedure is remedial, should be liberally construed and applied to the end that one who has a meritorious defense may be given an opportunity to present it, nevertheless, the policy of the courts is to relieve parties from their defaults only when a *proper* showing is made warranting such relief. ██ In the instant case we cannot say that such a ''proper showing'' was made by appellant as to justify us in holding that the trial court abused the broad discretion vested in it by denying the relief herein prayed for.

For the foregoing reasons, the judgment and the order denying defendant's motion to vacate the default taken against him are, and each is, affirmed.

York, P. J., and Doran, J., concurred.